UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 23-CR-237 (CJN) |
| | : | |
| ALAN ST. ONGE, | : | |
| | : | |
| Defendant. | : | |

**UNITED STATES' MOTION TO REVOKE RELEASE ORDER**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby replies to the defendant's response (ECF 91) to the government's motion for revocation of the defendant's conditions of release pursuant to 18 U.S.C. § 3148(b) (ECF 89). The government relies on its previously set forth statement of facts regarding the defendant's conduct at the Capitol on January 6, 2021 (ECF 89 at 1-2), the November 23, 2023, incident in Asheville, North Carolina (ECF 89 at 3-4), and the accompanying exhibit filed under seal (ECF 90). For the reasons set for the below, this court should revoke the defendant's pre-trial release order and detain him.

**I.    There is Probable Cause that the Defendant Violated a State Law While on Pre-Trial Release**

The defendant contends that "the charges [against him] are unproven allegations that Mr. St. Onge intends to contest" and that "the allegations of assault, while troubling are decidedly one-sided and must be addressed in [North Carolina]." ECF 91 at 4. While it is true that the defendant has only been charged with a crime and that he is presumed innocent until proven guilty in the state district courts of North Carolina, for purposes of revocation under 18 U.S.C. § 3148(b), the issue at this stage remains whether there is probable cause that, while on pretrial release, he committed a new violation of state law. 18 U.S.C. § 3148(b)(1)(A). As the government stated in

1

its motion to revoke, probable cause to arrest exists when "a reasonable and prudent officer would conclude from that totality of the circumstances that a crime has been or is being committed." *United States v. Holder*, 99 F.2d 1327, 1328 (D.C. Cir. 1993). In making the determination about whether probable cause exists, "[t]he Court must consider 'the facts and circumstances within [the arresting officer's] knowledge and of which they had reasonably trustworthy information." *United States v. Smith*, 373 F. Supp. 2d 223, 242 (D.D.C. 2019) (Moss, J.) (*citing Beck v. Ohio*, 379 U.S. 89, 91 (1964)). "Although probable cause is a fluid concept that is not readily or even usefully reduced to a neat set of legal rules, the Supreme Court has cautioned that a seizure of a person must be supported by evidence particularized with respect to that person." *Id.* (cleaned up and internal citations omitted).

    The totality of the facts and circumstances about the defendant's conduct at the 27 Club on Thanksgiving Day support a finding of probable cause that he violated state law. First, the victim witnesses who described the defendant's assaults to the police did so shortly after the assaults occurred. Second, the victim witnesses attached their own names to allegations against the defendant, making them a known complaining witnesses rather than anonymous informants. Third, Witness-1 reported that he came out an observed the defendant "standing over" Victim-2 and yelling at Victim-1 after he assaulted, thus corroborating the victims' accounts of the incident. Fourth, the officers' own observations at the scene supported the finding of probable cause that the defendant assaulted the victims. The officers observed injuries to Victim-1 that were consistent with her description of the defendant's conduct, that being a punch to her neck that resulted in bruising, scratch marks, and bleeding. The officers also obtained a copy of the defendant's receipt from the 27 Club. This receipt bore the defendant's name, his credit card information, and indicated that he had purchased eight drinks.

    The receipt furthers the finding of probable cause for the assaults because it established

2

that the defendant was, in fact, present in the bar. It also furthers a later finding of probable cause for the charge of driving under the influence of alcohol because it establishes that the defendant had purchased and in all likelihood consumed eight vodkas before he drove away from the scene that night after he had been informed that Witness-1 had called the police. Witness-1's report to the police about what he told the defendant, specifically that he had called the police and that if the defendant believed he was "in the right" he would remain at the bar, and the defendant's failure to remain at the scene is evidence of consciousness of guilt. As the defendant was fleeing, Witness-1 took a photo of his license plate, which he provided to police, which goes to both the defendant's identity as the person who committed the assaults and that he was operating a motor vehicle after drinking excessively. Using the information from his receipt and the photo that Witness-1 took officers were able to locate the defendant's vehicle as he drove away from the scene and place him under arrest for driving under the influence and moving violations. All these facts, which were known to the officers investigating the case, support their particularized finding of probable cause that the defendant had violated a variety of North Carolina laws. *Smith*, 373 F. Supp. 2d at 242. These same facts support a finding here that there is probable cause that the defendant violated state laws while on pretrial release. 18 U.S.C. § 3148(b)(1)(A).

## II.     All of the Conditions for Revocation Required Under 18 U.S.C. § 3148(b) are established here.

Under Section 3148(b), once the defendant is brought before the court, the judicial officer *shall* enter an order of revocation and detention if, after a hearing, the judicial officer –

>   (1)     finds that there is – (A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or (B) clear and convincing evidence that the person has violated any other condition of release; and
>
>   (2)     finds that – (A) based on the factors set forth in section 3142(g) . . . , there is no condition or combination of conditions of release that

>  will assure that the person will not flee or pose a danger to the safety
>  of any other person or the community; or (B) the person is unlikely
>  to abide by any condition or combination of conditions of release.

Each of these conditions is established in this case. As set forth above, there is probable cause that the defendant violated multiple North Carolina state laws on the evening of November 23, 2023. For the reasons set forth below, there is also clear and convincing evidence that the defendant violated another of his conditions of release. The defendant's conduct, as detailed further below, demonstrates that there is no condition or combination of conditions of release that will assure that he will not flee or pose a danger to the safety of another person or the community.

The defendant's conditions of release prohibit him from using alcohol "excessively." ECF 35 at 2. Yet, the defendant purchased eight vodkas in a single night. Later that night, after the assaults, he was arrested for and charged with driving under the influence of alcohol as well as two moving violations. It is difficult to conceive of a situation in which a person could have consumed alcohol more "excessively" than what the defendant did that night. His violation of this condition alone would be a legally sufficient basis to revoke his pretrial release. However, when taken together with the totality of his conduct that night, it is compounding evidence of his clear disregard for orders of the court and the fact that he is unlikely to abide by future orders.

There is no greater flight risk than someone who has already fled. After assaulting two people, the defendant fled from the scene of the 27 Club. In addition to showing his consciousness of guilt, the defendant's decision to flee from the scene—whether because he both knew he was in the wrong or because he knew that it could have implications for his pending federal case—is evidence of his willingness to try and evade the law and the consequences of his actions. That he decided to do so while intoxicated is also indicative of his willingness to evade the law regardless of the fact that in this case the flight itself posed a great risk to the community as all instances of

drunk driving do. The defendant should receive no credit for the fact that his attempted flight was unsuccessful thanks to the quick work and investigation of the local police.

The defendant's argument that he is not a flight risk because he left the bar after paying his tab should be assessed skeptically. First, based on the information thus far available to the government, it is unclear if the defendant paid his tab before or after the assault. Second, assuming that it is as the defendant alleges—that he paid it after the assault but prior to fleeing the scene—that does not change the fundamental fact that he still fled in his car from the scene after committing an assault and after he was told that the police were coming. He should receive no credit for the fact that, after assaulting two people, he decided to not also commit the additional crime of theft by not closing out his tab and effectively stealing his drinks.[1]

---

[1] The defendant argues that the government "gilded" its argument about the assaults with descriptions of the defendant's size. ECF 91 at 6. However, his size is an important factor when considered together with his tendency to commit violent acts against people who anger him or stand in his way. It requires no stretch of logic or imagination to understand that someone who weighs 320 pounds and stands more than six feet tall does more harm when he punches someone in the neck or stomps on their chest than would someone of average size. The government concedes that it does not have any information at this time about the exact size of the victims, but the fact is that the defendant is objectively much larger than most people and most women in particular. That the defendant was seemingly able to quickly overcome both of his victim's, one of whom was a woman, supports the inference that he is appreciably larger than them as well. The court can order that the defendant not possess weapons, that he not drink, and that he not drive, but it cannot place any restriction upon his liberty short of incarceration that assures that he will not use the his size to his advantage when he finds himself angered or jilted.

**CONCLUSION**

On November 23, 2023, the defendant violated his conditions of release at least four distinct times when he 1) drank to excess, 2) punched a woman in the throat, 3) stomped on a man's chest, and 4) drove drunk away from the scene. So long as he remains at liberty, he poses a danger to the community because he has shown that he feels unbound by the restrictions that this court places upon him, readily commits acts of violence against those who anger him, and uses his size to his natural advantage. He has also proven himself to be a flight risk by already fleeing once from the scene of a crime. The government respectfully requests that this Court detain the defendant pending resolution of his case.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

By:   *s/ Sean P. McCauley*
      SEAN P. McCAULEY
      Assistant United States Attorney
      New York Bar No. 5600523
      601 D Street NW
      Washington, DC 20530
      Sean.McCauley@usdoj.gov

      KAITLIN KLAMANN
      Assistant United States Attorney
      Illinois Bar No. 6316768
      601 D Street NW
      Washington, D.C. 20530
      Kaitlin.klamann@usdoj.gov

      HOLLY F. GROSSHANS
      Assistant United States Attorney
      D.C. Bar No. 90000361
      U.S. Attorney's Office for the District of Columbia
      601 D Street, N.W.
      Washington, D.C. 20530
      Holly.Grosshans@usdoj.gov